

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-29-2008

# Jackson v. USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4960

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Jackson v. USA" (2008). *2008 Decisions.* Paper 1112.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1112

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 06-4960

———————

STEVEN JACKSON,
                                        Appellant

v.

LIBERTY MUTUAL INSURANCE COMPANY,
Subrogee of The Shaw Group,

Intervenor Plaintiff in DC

v.

UNITED STATES OF AMERICA

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 05-cv-01579)
District Judge:  The Honorable Donetta W. Ambrose

———————

Argued:  May 5, 2008

———————

Before: SCIRICA, Chief Judge, BARRY and HARDIMAN, <u>Circuit Judges</u>

(Opinion Filed: May 29, 2008)

———————

Jonathan M. Kamin, Esq. (Argued)
Samuel P. Kamin, Esq.
David A. Wolf, Esq.
Goldberg, Kamin & Garvin
437 Grant Street
1806 Frick Building
Philadelphia, PA 15219-0000

Counsel for Appellant


Christopher J. Walker, Esq (Argued)
Isaac J. Lidsky, Esq.
United States Department of Justice
Civil Division
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0000

Robert L. Eberhardt, Esq.
Laura S. Irwin, Esq.
Office of the United States Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219-0000


Counsel for Appellee

_____

OPINION

_____


BARRY, Circuit Judge

The excellent Report and Recommendation ("R&R") of the Magistrate Judge,

adopted as its Opinion by the District Court, accurately set forth the facts of this case and

the controlling law and concluded that the United States is immune from suit by virtue of the independent contractor exception to the Federal Tort Claims Act ("FTCA") and, thus, that the United States' motion to dismiss under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction should be granted. Our review of a Rule 12(b)(1) dismissal is plenary. Gould Electronics, Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000). We will reverse and remand for further proceedings. Because, however, we write solely for the parties, and because the facts in the case are largely undisputed, it is neither necessary nor useful to reprise facts other than those which prompt us to reach a conclusion different from that reached by the District Court.

Suffice it to say that there is no question that if there is an independent contractor exception to the FTCA, and we have said in Norman v. United States, 111 F.3d 356 (3d Cir. 1997), that there is, the United States is not liable for injuries caused by the negligence of its independent contractor, Shaw. The District Court correctly so found.

But the FTCA does not immunize the United States from claims against it for injuries caused by the negligence or omission of its own employees if those employees were acting within the scope of their employment. If such acts are alleged, a district court would have subject matter jurisdiction to entertain the claim, with the finding of liability ultimately for the factfinder. 28 U.S.C. § 1346(b)(1).

There are a number of independent acts of negligence on the part of one or more employees of the United States alleged, albeit cursorily, in the complaint and set forth in

some detail in the R&R, albeit not denominated and discussed as acts of negligence "independent" of those of Shaw.[1] All of these acts, particularly those of Frank James, either predated Shaw's entry onto the work site or involved no affirmative conduct or omission by any Shaw employee. Indeed, it could well be argued that absent one or more of these acts, the accident and the grievous injuries suffered by Jackson would not have occurred.

We quote from the R&R which, as noted, was adopted by the District Court as its Opinion in this case:

> In early November 2002, before Shaw began working at Site 41, Frank James, a Navy safety officer, was asked to inspect a projectile that had been found in a trench at the Naval Base. Frank James inspected the projectile and observed it had no nose fuse, but he saw there was a hole in the center of the projectile. With a screwdriver, Mr. James scraped in the hole and saw a tracer element, which led him to believe the projectile had been fired. Mr. James then took the projectile to Site 41 and wrote a "green tag" for it, which meant it was cleared to proceed to the next level.
>
> Thereafter, the Commanding Officer at the Naval Base requested that another projectile situated at Site 41 be retrieved and cleaned, so he could display it. However, a government contractor removed the same projectile which had been found in the trench and inspected by Frank James – not the one requested by the Commanding Officer – and it was cleaned and sandblasted, which made the projectile shine. When Frank James became aware that the wrong projectile had been retrieved and sandblasted, he took the sandblasted projectile back to Site 41, where Shaw personnel

---

[1] We assume that the R&R did not go this far because Jackson's primary argument was something quite different, i.e. that the independent contractor exception did not apply because Frank James' acts with respect to the projectile which caused the injuries amounted to the United States exercising control over Shaw's contractual duties. This argument was correctly rejected.

4

had arrived and were working.  Frank James spoke to Al Grant, Shaw's UXO supervisor, and explained why he was returning the projectile.

At his deposition, Al Grant testified as follows:

> Frank [James] brought [the projectile] back to us, and then I just put it off to the side.  I asked him what is it, and he said don't worry about it.  It's safe to cut up.  It's a shot round and safe to cut up.

Al Grant reiterated that when Frank James returned the projectile "he didn't say anything.  He just brought it up and said here is this thing, you can have it back, and I said, you know, okay, no problem and we put it off to the side.  We discussed what he thought it was, [which was] an obsolete shell." (citations omitted) (A. 009-010).[2]

There is no suggestion that these acts did not take place, and there is no dispute as to where and when they took place.  Nor is there any suggestion that Frank James was not acting within the scope of his employment when he admittedly misidentified the projectile as one safe to handle and twice brought it to the Shaw work site to be destroyed.  This is enough, in our view, to have warranted denial of the motion to dismiss on jurisdictional grounds.  Whether the United States' alternate arguments before the Magistrate Judge will ultimately carry the day – whether any negligence by Shaw was an intervening and superceding cause of Jackson's injuries and whether Jackson assumed the risk of injury when he attempted to cut the projectile with a blow torch – should be resolved on the merits, and not in a jurisdictional challenge.  Matsko v. United States, 372 F.3d 556, 561

---

[2]  The United States is shielded from liability for any negligence on the part of Al Grant and/or other Shaw employees, including Jackson himself, unless the United States had the power to control and/or did control their day-to-day operations.  See Norman, 111 F.3d at 357.  As we have already suggested in note 1, there is no such evidence.

5

(3d Cir. 2004).

We will reverse the order of the District Court and remand for further proceedings consistent with this Opinion.