**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1846
_____

RONALD GREENLAND,
                                        Appellant

v.

UNITED STATES OF AMERICA; MR. BENSON,
Bureau of Prisons Coordinator at Moshannon Valley Correctional Center;
CAMERON LINDSAY, Former Warden, Moshannon Valley Correctional Center;
G. C. WIGEN, Current Warden, Moshannon Valley Correctional Center;
MARIA DAWSON, Medical Administrator, Moshannon Valley Correctional Center;
DR. TRAVARES, Medical Administrator, Moshannon Valley Correctional Center;
GEO GROUP, INC.
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 3-13-cv-00272)
District Judge:  Honorable Kim R. Gibson
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 5, 2016

Before:  VANASKIE, SCIRICA and FUENTES, Circuit Judges

(Opinion filed: August 22, 2016)
_____

OPINION[*]

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

_____

PER CURIAM

Ronald Greenland was scheduled to have surgery on November 30, 2009, to repair an occasionally strangulated inguinal hernia, but his arrest on November 25, 2009, prevented him from undergoing the procedure. During his detention at the Metropolitan Detention Center ("MDC") and Moshannon Valley Correctional Center ("MVCC"), both Bureau of Prisons ("BOP") contract facilities operated by the Geo Group ("Geo"), he repeatedly requested a hernia operation. His requests were denied until February 2013, when he was taken to an outside hospital for corrective surgery.

Greenland submitted in forma pauperis a complaint against the United States, Geo, the BOP coordinator at MVCC (Preston Benson), the warden and former warden of MVCC, and two doctors, both former MVCC medical administrators. He claimed that the individual defendants provided inadequate medical care and acted with gross negligence and deliberate indifference to a serious medical need. He also specifically sought relief against the United States under the Federal Tort Claims Act ("FTCA"), against Benson under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), and against what he described as the state defendants for negligence under Pennsylvania law.

A Magistrate Judge recommended that the FTCA claim be allowed to proceed if Greenland submitted an amended complaint that permitted an inference of negligence.

2

The Magistrate Judge otherwise recommended that the complaint be dismissed, concluding that the Bivens claim was not actionable against the employees of a private prison and that the District Court should not exercise its supplemental jurisdiction over any negligence claims under state law. The Magistrate Judge invited Greenland to file objections, and he also granted Greenland leave to amend his complaint within the time period for filing objections.

Greenland, in requesting an extension of time, expressed his confusion as to whether he was to file an amended complaint at the same time that he filed objections. Without additional explanation, the Magistrate Judge granted Greenland an extension of time to file objections or an amended complaint. Greenland timely filed both on the same day.

In his objections, Greenland conceded that he could not bring his Bivens claim against the private actors in his complaint, but he argued that he should be permitted to sue Benson (whom he again described as the BOP coordinator) under Bivens. He outlined his claims against Benson and asserted that they and his other claims stated a claim against the United States under the FTCA, also. Greenland further argued that the exercise of supplemental jurisdiction over his state law claims was appropriate (contending that there was no basis to decline supplemental jurisdiction under 28 U.S.C. § 1367(c)). He noted that he stated Eighth Amendment and state law claims against the defendants. He asked that his original complaint be allowed to proceed.

3

In his amended complaint, he clarified that he sought to proceed against the United States under the FTCA, against Benson under Bivens, and against the other individual actors and Geo under 42 U.S.C. § 1983 (bringing Eighth Amendment claims) and under state law. He again presented his allegations relating to his efforts (through various channels) to be treated for his hernia and describing the pain he suffered when he was denied an operation. He alleged that the defendants knew that his hernia had become strangulated again and withheld the proper care, which caused him to suffer complications. He also claimed that Geo has a custom or practice of expending as little as possible on health care; he alleged that those with chronic health problems are given superficial medical care to stabilize their conditions until their release from BOP custody (which, in the case of most MVCC inmates, is removal to other countries).

The Magistrate Judge ordered service of the amended complaint on the United States and Benson and noted that the objections to the recommendation that the complaint and amended complaint be dismissed as to the other defendants remained pending. After service, the United States and Benson[1] filed a motion to dismiss or, in the alternative, a motion for summary judgment. The defendants argued that the Bivens claim should be rejected because Greenland failed to exhaust his administrative remedies, the United States has sovereign immunity, Greenland did not allege Benson's personal involvement, and Benson has qualified immunity. The defendants also sought dismissal

---

[1] Benson acknowledged that he is employed by the BOP and was at MVCC as the

4

of the FTCA claims 1) against Benson because the United States was the only proper party, 2) related to care at MVCC because of the independent contractor exception to the FTCA, and 3) related to medical treatment at MDC because Greenland could not show a prima facie case of negligence under New York law. Greenland opposed the motion and sought appointment of counsel.

The Magistrate Judge issued another "order, report and recommendation." The Magistrate Judge denied the motion for appointment of counsel and recommended that the defendants' motion to dismiss be granted. The Magistrate Judge declined to reexamine the recommendation that the defendants other than those served with the amended complaint be dismissed from the action. The Magistrate Judge also concluded that no Bivens claim could proceed against Benson because Benson, who relied on decisions made by medical personnel, did not have the requisite state of mind for liability. Alternatively, the Magistrate Judge determined that Benson was immune from suit under the doctrine of qualified immunity. The Magistrate Judge also stated that the FTCA claim should be rejected because the United States has not waived sovereign immunity for the negligence of independent contractors such as Geo. The Magistrate Judge further described the assertion of negligence as a "threadbare conclusion." The Magistrate Judge concluded that a deliberate indifference or negligence claim cannot be

---

"secure oversight manager."

5

stated where pain (like what Greenland experienced) is a consequence of a medical condition and not an injury caused by the delay in treatment.

Greenland again filed objections; he urged the District Court to reject the recommendation and allow his amended complaint to go forward. In addition to underscoring the pleading standard, he emphasized that his surgery scheduled for November 2009 could serve as a sufficient factual basis to show that he had a serious condition for which corrective surgery was the required treatment. He took issue with the Magistrate Judge's conclusion that he suffered no injury from the delay, arguing that the conclusion was inconsistent with his allegations (and the pleading standard). Greenland also argued that Benson's position as secure oversight manager put him in the position to override the decisions of medical personnel.

The District Court adopted both reports and recommendations of the Magistrate Judge (and allowed the order denying counsel to stand). In doing so, the District Court stated incorrectly that Greenland had not filed objections to the first report and recommendation and rejected Greenland's second set of objections. The District Court dismissed the amended complaint and closed the case. Greenland presents a timely appeal to challenge the dismissal of his claims.[2]

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's order of dismissal. See McGovern v. City of

---

[2] The Government previously submitted a motion for summary action, which we denied.

<u>Philadelphia</u>, 554 F.3d 114, 115 (3d Cir. 2009). We will vacate the District Court's order.

First, the procedural course of this case in the District Court was irregular. The Magistrate Judge filed an "order, report and recommendation," recommending that some claims be dismissed and some proceed. At the same time, the Magistrate Judge notified Greenland that he could file objections and an amended complaint only as to the claims that were being permitted to proceed. Although the Magistrate Judge allowed amendment of the FTCA claims within the time period for filing objections, he foreclosed (essentially without the District Court having weighed in) the option as to the other claims, including the state law claims. As Greenland pointed out in his first set of objections, the situation was different from those in which it may be appropriate under 28 U.S.C. § 1367(c) to decline to exercise supplemental jurisdiction. As Greenland was permitted to amend his federal claim, it is unclear why he was not permitted to reassert his state law claims. Also, at that stage, leave to amend should have been given freely. <u>See</u> Fed. R. Civ. P. 15(a)(2). While there are bases on which to deny leave to amend, <u>see</u> <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1434 (3d Cir. 1997), no basis was identified. The District Court ultimately approved the Magistrate Judge's recommendation. However, the District Court did not review Greenland's objections, ruling with the misunderstanding that Greenland had not filed any. Furthermore, the

Greenland requests our permission to file an overlength brief, which we grant.

Magistrate Judge acted on his own recommendation and proceeded before the District Court ruled. Accordingly, the District Court did not consider the amended complaint in its entirety. Only the claims against the United States and Benson were permitted to go forward, and the complaint was served only on those two defendants.

The District Court's decision to dismiss the complaint as to those defendants must be vacated as well.[3] The District Court, adopting the Magistrate Judge's recommendation, dismissed the FTCA claim against the United States on the basis that the United States has not waived sovereign immunity for contractors like Geo. The FTCA allows for district courts to hear some negligence suits for injuries caused by Government employees. 28 U.S.C. § 1346(b). A Government employee includes officers and employees of any federal agency; the term "federal agency" "does not include any contractor with the United States." 28 U.S.C. § 2671. "Thus, there is an independent-contractor exemption in the [FTCA]." Norman v. United States, 111 F.3d 356, 357 (3d Cir. 1997). In distinguishing an independent contractor from a federal agency employee, the "critical factor" is "whether the government has the power to control the detailed physical performance of the contractor." Id. (quotation marks and citation omitted). The receipt of federal money and the required compliance with federal standards are not determinative factors; the question is whether "day-to-day operations

_____

[3] Although Greenland raised claims against other defendants, they were not served, so we have appellate jurisdiction to evaluate the decision. See United States v. Studivant, 529 F.2d 673, 674 n.2 (3d Cir. 1976).

8

are supervised by the Federal Government." Id. (quotation marks and citation omitted). In making the determination, courts have considered the contract between the parties. See, e.g., id. at 357-58 (reviewing the contract and noting that it required an on-site supervisor provided by the contractor and disallowed Government direction or supervision of the contractor's employees); see also Logue v. United States, 412 U.S. 521, 530 (1973) (considering what a contract said about supervision and the authority to control activities).

In alternatively moving for summary judgment, the United States submitted the contract with Geo, but the District Court did not consider it or any other evidence related to the question. In ruling on the motion to dismiss, the District Court appears to have overlooked the allegations in the complaint that a Government employee (at one point, Benson) was stationed in the prison to "ensure strict conformity with BOP regulations, guidelines, policies, program statements, and penological objectives." Amended Complaint at 3, § IV, ¶ (14)a; 7, § V, ¶ 26. Also, Greenland alleged that a BOP representative (in responding to an AUSA's inquiry, on his sentencing judge's request, about his medical care in MVCC) responded with a letter detailing "medical protocol within BOP facilities" and asserting that the "[BOP would] be able to provide adequate care for Mr. Greenland." Id. at 10, § V, ¶ 34. And he stated that he was informed by Geo officials at a different facility that they needed the Government's permission to schedule

him for surgery.  Id. at 5, § V, ¶ 21.  Accordingly, given the allegations and allowing all reasonable inferences in Greenland's favor, dismissal of the FTCA claim on the basis of the independent-contractor exception was not appropriate.[4]

Also, Greenland asserted that Benson, who clearly is a BOP employee, caused him injury by his negligence.  See, e.g., Complaint at 12, § V, ¶ 42.  We do not believe that the District Court should have ruled out a deliberate indifference or negligence claim based on the allegations in the complaint.  To state a claim under the Eighth Amendment, Greenland needed to plead deliberate indifference to a serious medical need.  See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention."  Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  Also, "if unnecessary or wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment."  Id. (citation and quotation marks omitted).  Deliberate indifference involves the denial of reasonable requests for medical treatment that exposes the inmate to suffering or the threat of residual injury, or the intentional refusal to provide care when the need for that care is known, or the opting for "'an easier and less efficacious

---

[4] Also, the United States appears not to have argued the independent-contractor exception in relation to the claims that arose at MDC (the Government instead argued that Greenland did not show a violation of New York tort law).

treatment'" under some circumstances, or the deliberate prevention of the recommended treatment. See Monmouth Cnty. Corr. Institutional Inmates, 834 F.2d at 346-47. Mere negligence or mere disagreement about a course of treatment does not state a claim of cruel and unusual punishment. Id. at 346.

We do not foreclose the possibility that discovery will bear out the District Court's conclusion from the complaint – that Greenland and prison officials simply disagreed about the proper course of treatment for a couple of years. However, that conclusion does not necessarily follow from the allegations. According to the complaint, Greenland arrived in prison at approximately the time when his hernia operation was scheduled. Taking all his claims and all inferences in his favor, because a doctor diagnosed him with a hernia requiring surgery, he described a serious medical need. He also included allegations that he suffered pain (which was, at times, intense), including during activities of daily living because of the denial of surgery once he was in prison. Greenland further alleged that the defendants refused to provide the necessary care and gave him an easier, less expensive, and less efficacious treatment in part because of the nature of the detention facility (a prison for aliens slated for removal). For these reasons, we conclude that the District Court should not have dismissed the claims.[5]

---

[5] We are aware that Benson may be non-medical correctional staff who did not do more (or need to do more) because Greenland was getting treatment from the prison doctor. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). However, we decline to affirm the dismissal on this basis (or on the claim of qualified immunity) in light of the

11

We will vacate the District Court's order dismissing Greenland's complaint. We remand this matter to the District Court for further proceedings consistent with this opinion.[6] As we noted previously, we grant Greenland's motion to file an overlength brief.

---

allegations that describe Benson's role as one of particular oversight or supervision or control over decisions affecting BOP prisoners in a BOP contract facility. Although we agree with the Government that an FTCA claim does not lie against Benson individually, we do not read the complaint as raising an FTCA claim against him (Greenland instead proceeds against him under <u>Bivens</u>). We also note the argument that Greenland did not exhaust his administrative remedies. That argument is not a basis to affirm the order dismissing the complaint where Greenland alleged, in his complaint, that he exhausted his administrative remedies. Our decision does not preclude the District Court's examination of this issue (or any others) based on evidence presented on a renewed motion for summary judgment.

[6] The United States and Benson argue that "there is a distinct possibility" that his case was mooted by Greenland's removal to Jamaica because Greenland cannot lawfully reenter the country to litigate his claim. It is not clear to us how his removal precludes him from filing documents (which he has done since being removed) or litigating through a representative. In any event, his removal did not resolve his case or moot his claim for relief, including money damages.